IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**PAUL TELLES,**

    **Plaintiff,**

vs.                                       **No. CIV 99-0999 LCS-ACE**

**SMITH'S FOOD AND DRUG
CENTERS, INC.**

    **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc.27), filed May 3, 2000. The Court, having considered the arguments of counsel, record, relevant law, and being otherwise fully informed, finds that this Motion should be **GRANTED IN PART AND DENIED IN PART**.

**I.    Background.**

In March 1986, Plaintiff, an Hispanic male, began working for Defendant as a meat cutter in its Las Cruces grocery store (Store 482). (Def. Ex. 1 at 22.) Bill Denney was the assistant meat department manager at Store 482. (Def. Ex. 1 at 28.) In 1988, Plaintiff transferred to one of Defendant's stores in Tucson, Arizona. (Def. Ex. 1 at 22-23.) In 1991, Plaintiff transferred to Defendant's new Las Cruces store (Store 483), where he became the assistant meat department manager under Danny Martinez. (Def. Ex. 1 at 24.) After about five months in that position, Plaintiff

transferred to Defendant's Store 507 in El Paso, Texas. (Def. Ex. 1 at 25.) While at Store 507, Plaintiff worker under Denney, who was the meat department manager there. (Def. Ex. 1 at 25.) For a time, Plaintiff acted as Denney's assistant manager. (*Id.*) On December 20, 1991, after a drop in his hours at Store 507, Plaintiff was transferred back to Store 483 in Las Cruces. (Def. Ex.1 at 33.) Upon his return to Store 483, Plaintiff's supervisor was Danny Martinez. (*Id.*) In 1994, Denney replaced Martinez as the meat department manager. (Def. Ex. 1 at 40.) Plaintiff served as Denney's assistant manager until he was replaced in that capacity by Guillermo "Memo" Vasquez, another meat cutter. (Def. Ex. 1 at 42.) In 1997, Plaintiff was working solely as a meat cutter.(Def. Ex. 1 at 39-42.)

In the second half of 1997, a Wal-Mart Super Center and two new grocery stores opened in the vicinity of Store 483. (Def. Ex. 2 at 1.) In anticipation of a reduction in sales due to increased competition, Defendant determined that it would be necessary to lay off store employees, including two meat cutters. (*Id.*) In late July or early August, 1997, Sabrina Gschwind Allen (Allen), the Director of Store 483, asked Kevin Slowey, Defendant's New Mexico and West Texas Personnel Manager, to determine the appropriate criteria to select to the meat cutters for lay off. (Def. Ex. 2 at 2; Def. Ex. 3 at 2.) Slowey told Allen that she should lay off the meat cutters in reverse order of departmental seniority. (Def. Ex. 2 at 2; Def. Ex. 3 at 2.) Allen explained that she understood Ron Knowles and Ernie Padilla were the two least senior meat cutters, and would therefore be the first to be laid off, but that she did not know the order of seniority for the other meat cutters. (*Id.*) Allen asked Slowey how to determine the remaining meat cutters' departmental seniority. (*Id.*)

Slowey called Defendant's payroll department in Salt Lake City, Utah and spoke with Pam Liljenquist, a payroll clerk. (Def. Ex. 2 at 2.) Slowey asked Liljenquist to provide him with a list of

the meat cutters at Store 483 and their departmental seniority dates. Someone at Store 483 had asked Slowey what effect Plaintiff's transfers to Tucson and El Paso would have on Plaintiff's seniority. (Def. Ex. 2 at 2-3.) For this reason, Slowey asked Liljenquist to perform a "time audit" on Plaintiff to confirm when his departmental seniority began. (Def. Ex. 2 at 2.)

Sometime between August 5, 1997 and August 11, 1997, Slowey received a computer print out list from Liljenquist. (Def. Ex. 2 Attach. B.) The computer printout shows Plaintiff as the most senior meat cutter with a seniority date of March 25, 1986. (*Id.*) However, that date is crossed out and the date of December 22, 1991 is handwritten on the list in two places. Slowey explained in his affidavit that Plaintiff's departmental seniority date was the date he returned to Store 483 from Store 507. (Def. Ex. 2 at 3-4.) Slowey attested that Defendant's policy, which had been in place since at least 1989, was that any interstate transfer between store, regardless of the reason, results in a new store and departmental seniority date for the transferred employee commensurate with that employee's starting date in the new store. (Def. Ex. 2 at 3.) Defendant's policy regarding transfers is attached to Slowey's affidavit as Attachment A. (Def. Ex. 2 Attach. A.) Slowey compiled a seniority list based on information received from Liljenquist and faxed the list to Paul Iott, the Assistant Director of Store 483, on August 11, 1997. (Def. Ex. 2 at 4.)

Denney posted the list in the meat department on August 11, 1997. (Def. Ex. 4.) None of the meat cutters complained about their ranking. (*Id.*) Denney informed Ernie Padilla and Ron Knowles, the two least senior meat cutters, that they were almost certainly going to be laid off when the new Wal-Mart opened. (Def. Ex. 4 at 2.) In October, 1997, both men resigned and began working at Wal-Mart. (*Id.*)

At the end of August 1997, Plaintiff reported to Iott that Denney was making racial remarks.

3

(Def. Ex. 1 at 60-61.) Plaintiff attests that he specifically told Iott that Denney was using racial slurs and mocked an elderly Hispanic woman who walked with a limp.[1]  (Pl. Ex. 1 at ¶ 20.) Plaintiff attests that the original list showed that he was the most senior meat cutter, but that after he complained about Denney's racial remarks, his seniority date was recalculated, making him a less senior employee. (Pl. Ex. 1 ¶¶ 22; 25.) On October 17, 1997, Slowey met with Plaintiff, and other meat department employees, individually to discuss complaints he had received regarding Denny's management style. (Def. Ex. 2 at 5.) Plaintiff did not raise any issue of discrimination with Slowey. (*Id.*) On November 9 or 10, 1997, Plaintiff complained to Allen that Denney was making comments about him. (Def. Ex. 1 at 63-64.)

Sales continued to decline in the meat department. (Def. Ex. 4 at 2.) In late December 1997, Defendant's district manager determined that another meat cutter needed to be laid off. (*Id.*) Plaintiff was then the least senior meat cutter because Padilla and Knowles had resigned. (*Id.*) On January 4, 1998, Plaintiff was laid off from his job. Sales continued to decline and, in March, 1999, Danny Salas, another meat cutter, was laid off. (Def. Ex. 4 at 2.)

Vasquez stated in his affidavit that, about two months after Plaintiff was laid off, Vasquez asked Denney for some time off. (Pl. Ex. 4.) When Denney replied that he could not give him the time off, Vasquez suggested that he recall Plaintiff to work. (*Id.*) Denney replied that he would not recall Plaintiff because Plaintiff had filed an EEOC complaint. (*Id.*)

Denney hired two part-time seafood clerks for a brief period after Plaintiff was laid off. (Pl. Ex. 5 at 56-57. Denney offered hours to Robert Suarez, another meat cutter who had been laid off,

---

[1] Denney was unaware at the time that the woman was Plaintiff's mother-in-law. (Pl. Ex.1 ¶ 20.)

but did not offer those same hours to Plaintiff. (Pl. Ex. 5 at 43.) On August 9, 1998, Denney rehired Padilla as a full-time seafood clerk at a significantly lower rate of pay than Padilla had earned as a meat cutter. (Def. Ex. 4 at 2.) Plaintiff was not considered for the seafood clerk position. (Def. Ex. 6 at 2.) In September, 1999, Defendant transferred Corky Martinez, a meat cutter in its Alamogordo store to Store 483. (Pl. 5 at 43; Def. Ex. 9 ¶ 7.)

On August 24, 1998, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. (Compl. Ex. 1.) Plaintiff checked the boxes for National Origin Discrimination and Retaliation and stated that the discrimination took place from August 1, 1997 to January 3, 1998. (*Id.*) In the substance of the charge, Plaintiff alleged as follows:

I. STATEMENT OF HARM: I was retaliated against for reporting my supervisor (Anglo) of wrongdoing to management (Anglo) by having my work hours reduced to zero from 40 hours per week. I was constructively discharged.

II. RESPONDENT'S ACT, POLICY OR PRACTICE ALLEGEDLY RESULTING IN DISCRIMINATION: I reported wrongdoing by my immediate supervisor to upper management; they did nothing to the supervisor but did retaliate against me by reducing my hours to zero.

III. STATEMENT OF DISCRIMINATION: I believe I was discriminated against by being retaliated against for reporting my immediate supervisor (Anglo) to my upper management (all Anglo). Nothing happened to my supervisor, but I was constructively discharged by having my hours reduced to zero after reporting the wrongdoing. This is a violation of Title VII of the Civil Rights Act of 1964, as amended.

(Compl. Ex. 1.)

On November 19, 1998, Plaintiff filed a Supplemental Statement of Facts alleging additional facts in support of a claim for a hostile work environment. On May 15, 1999, EEOC issued a determination that it was unable to conclude that the information obtained established a statutory violation. (Comp. Ex. 1.)

On August 6, 1999, Plaintiff filed a Complaint in state court, alleging discrimination on the basis of national origin (Count I) and retaliation (Count II) under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and supplemental state law claims for breach of implied employment contract (Count III) and prima facie tort (Count IV). On September 9, 1999, Defendant removed the case to this Court. On May 3, 2000, Defendant moved for summary judgment on all counts.

**II.    Standard of Review.**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F. 3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party

6

does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 644, 671 (10th Cir.1998).  Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter.  *See McGarry v. Pitkin Co.*, 175 F. 3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof.  *See Simms,*165 F. 3d at 1326.  It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586.  An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion.  *See Bullington v. United Air Lines*, Inc., 186 F. 3d 1301, 1313 (10th Cir.1999).  The substantive law at issue determines which facts are material in a given case.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*


**III.    Analysis.**

In Counts I and II, Plaintiff alleges harassment, disparate treatment and constructive discharge based on national origin and retaliation in violation of Title VII.  Title VII makes it unlawful for an employer to discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment on the basis of national origin.  *See* 42 U.S.C. § 2000e-2(a)(1).  Title VII

prohibits retaliation against employees for asserting their rights under Title VII, providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

### A. Whether Plaintiff's claims of hostile work environment, disparate treatment and constructive discharge based on national origin discrimination are barred by his failure to exhaust administrative remedies.

Defendant argues that Plaintiff's claims of hostile work environment, disparate treatment and constructive discharge based on national origin discrimination, as alleged in Count I, are barred by his failure to exhaust administrative remedies. Exhaustion of administrative remedies is a prerequisite to bringing suit under Title VII. *See Seymore v. Shawver & Sons, Inc.*, 111 F. 3d 794, 799 (10th Cir. 1997); *Jones v. Runyon*, 91 F. 3d 1398, 1399 (10th Cir. 1996) To exhaust administrative remedies, a plaintiff must timely file a charge of discrimination with the EEOC. *See* 42 U. S. C. § 2000e-5 (e) and (f)(1). The charge must be in writing, signed, verified and must contain a clear and concise statement of the facts. *See* 29 C. F. R. §§ 1601.9; 1601.12 (3). The purposes of the exhaustion requirement are to provide notice of the alleged violation to the charged party, and to provide the EEOC with the opportunity to conciliate the claim. *See Seymore v. Shawver & Sons, Inc.*, 111 F. 3d at 799.

In determining whether a Title VII claim has been exhausted, the Court must decide if the complaint "encompass[es] any discrimination like or reasonably related to the allegations of the EEOC charge . . . ." *Jones v. Runyon*, 91 F. 3d 1398, 1400 (10th Cir. 1996) (*quoting Ingels v.*

*Thiokol Corp.* 42 F. 3d 616, 625 (10th Cir. 1994) (quotations omitted)). In making the exhaustion determination, the Court must liberally construe the EEOC charge. *See Gonzalez-Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F. 2d 857, 859 (10th Cir.1983); *Harrell v. Spangler, Inc.*, 957 F. Supp. 1215, 1219 (D. Kan.1997).

In his EEOC charge of August 24, 1998, Plaintiff alleged that he was "retaliated for reporting my supervisor (Anglo) of wrongdoing to management (Anglo) by having my work hours reduced to zero from 40 hours per week." (Compl. Ex. 1.) Plaintiff checked the box for national origin discrimination and retaliation. (*Id.*) The use of the word "Anglo" combined with the fact that Plaintiff is Hispanic indicates that Plaintiff asserted that his hours were eliminated due to his national origin. Liberally construed, Plaintiff's EEOC charge asserts a claim for disparate treatment and constructive discharge based on national origin discrimination as well as a claim for retaliation. However, even a liberal reading of the charge fails to produce anything "like or reasonably related to" Plaintiff's claim for hostile work environment harassment. Therefore, I conclude that Plaintiff failed to exhaust his hostile work environment claim through his original charge of discrimination.

Plaintiff contends that he exhausted his administrative remedies with respect to his hostile work environment claim by submitting the Supplemental Statement of Facts to the EEOC on November 19, 1998. The Supplemental Statement of Facts contained allegations supporting a claim for a hostile work environment. In support of this argument, Plaintiff relies on *Gunnell v. Utah Valley State College*, 152 F. 3d 1253 (10th Cir. 1998). In *Gunnell*, the Tenth Circuit considered whether the plaintiff had exhausted her administrative remedies regarding her sexual harassment claim, which was not contained in the original charge of discrimination, but was included in a subsequently filed supplement. *See Gunnell,* 152 F. 3d at 1260. Based on the supplemental charge

of discrimination, the Tenth Circuit concluded that the plaintiff had exhausted her administrative remedies as to her sexual harassment claim. *See id.* at 1260. The Tenth Circuit carefully pointed out that Gunnell's supplemental allegation of sexual harassment did not relate back to her original charge because it was not related to or growing out of the subject matter of the original charge. *See Gunnell*, 152 F. 3d 1260 n.3 (*citing* 29 C.F.R. § 1601.12(b)). Nonetheless, the Tenth Circuit considered Gunnell's supplemental allegation because the supplement itself was filed within the time limit for filing an administrative charge of discrimination. *Id.*

*Gunnell* is distinguishable from this case because here Plaintiff's Supplemental Statement of Facts was not filed within time limit. Title VII requires a plaintiff to file an administrative charge of discrimination within 300 days of the complained-of conduct. *See* 42 U.S.C. § 2000e-5(e)(1). Plaintiff last worked for Defendant on January 4, 1998. Plaintiff filed his Supplemental Statement of Facts with the EEOC on November 19, 1998, which was 319 days after January 4, 1998, nineteen days outside the time limit. Unlike the plaintiff's supplemental allegations in *Gunnell*, Plaintiff's Supplemental Statement of Facts was not filed within the time limit for filing an administrative charge of discrimination. Plaintiff's August 24, 1998 charge of discrimination is not like or reasonably related to a hostile work environment claim. Therefore, Plaintiff did not exhaust his administrative remedies with respect to his hostile work environment claim.

Moreover, even if the Supplemental Statement of Facts had been timely filed, it did not provide Defendant with notice of a hostile work environment claim. One of the main purposes of the exhaustion requirement is to provide notice of the nature of the alleged violation to te charged party. *See Ingels v. Thiokol Corp.*, 42 F. 3d 616, 625 (10th Cir.1994). It is undisputed that Defendant did not receive notice of the Supplemental Statement of Facts until after Plaintiff filed his lawsuit. (Def.

10

Ex. 9.) Dismissal is appropriate when a charged party does not receive notice of a claim during the pendency of the administrative proceedings. *See Jones v. Denver Post Corp.*, 203 F. 3d 748, 755 (10th Cir. 2000). As it is undisputed that Defendant did not receive notice of the hostile work environment claim, Plaintiff's hostile work environment claim is barred by his failure to exhaust administrative remedies and should be dismissed. However, Plaintiff's claims for disparate treatment and constructive discharge based on national origin discrimination are not barred because Defendant received adequate notice of them through Plaintiff's EEOC charge of August 24, 1998. *See Gonzalez-Aller Balseyro,* 702 F. 2d at 859.

**B.     Whether Plaintiff has established a *prima facie* case of retaliation in violation of Title VII as alleged in Count II.**

Plaintiff alleges that Defendant retaliated against him in violation of Title VII when it constructively discharged him and when it later failed to recall him after business picked up. Defendant argues that it is entitled to summary judgment on both these claims. Plaintiff's Title VII retaliation claims are analyzed under the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Cole v. Ruidoso Mun. Schs.,* 43 F.3d 1373, 1381 (10th Cir. 1994). Plaintiff must first establish a *prima facie* case of retaliation. *Id.* If Plaintiff can establish a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, nondiscriminatory business reason for the action. *See id.* at 1379. Once Defendant has articulated a non-discriminatory reason for the action, then the burden shifts back to Plaintiff to show that the asserted reason is pretextual. *Id.*

In order to establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged

in protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) he was subjected to adverse employment action by his employer; and (3) a causal connection exists between the protected activity and the adverse action. *See McCue v. Kansas Dep't of Human Resources*, 165 F.3d 784, 789 (10th Cir.1999). The plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *Perry v. Woodward*, 199 F. 3d 1126 (10th Cir. 1999). Defendant argues that Plaintiff is unable to satisfy the first and third elements of a *prima facie* case.

Defendant argues that report of a supervisor's time clock theft does not satisfy the first element of Plaintiff's prima facie case. In his EEOC charge, Plaintiff asserted that Defendant retaliated against him for reporting his Anglo supervisor's wrongdoing to upper management. (Compl. Ex.1.) In his brief, Plaintiff elaborates that he complained that Denney engaged in "time clock theft" in that he conducted personal business while on the time clock. Title VII establishes two categories of protected activity: participation and opposition. *See* 42 U.S.C. § 2000e-3(a) (prohibiting retaliation because an employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter").

"Time clock theft" is not made unlawful by Title VII. However, at the end of August 1997, Plaintiff reported to Paul Iott, Assistant Store Director, that Denney was making racial remarks. (Def. Ex. 1 at 60-61.) On November 9 or 10, 1997, Plaintiff complained to Allen that Denney was making comments about him. (Def. Ex. 1 at 63-64.) Complaints to management, even informally, can be sufficient to satisfy the participation prong of the first element of a *prima facie* case for retaliation. *See Jeffries v. State of Kansas*, 147 F. 3d 1220, 1231 n.9 (10th Cir. 1998). The fact that

Plaintiff failed to exhaust administrative remedies with respect to his hostile work environment claim is not fatal to his retaliation claim. *See Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir.1984) (opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated). Viewing the record in the light most favorable to Plaintiff, I find that Plaintiff has established a genuine dispute of material fact as to whether he engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination. Summary judgment is, therefore, inappropriate on this ground.

Defendant next argues that Plaintiff is unable to establish a causal connection between his reports of discrimination the lay off decision. A retaliatory motive may be inferred when an adverse action closely follows protected activity. *See Chavez v. City of Arvada*, 88 F. 3d 861, 866 (10th Cir.1996). The closer in time that the adverse action occurred to the protected activity, the more likely it will support a showing of causation. *Compare Ramirez v. Oklahoma Dept. of Mental Health*, 41 F. 3d 584, 596 (10th Cir.1994) (one and one-half month period between protected activity and adverse action may, by itself, establish causation) *with Richmond v. ONEOK, Inc.*, 120 F. 3d 205, 208 (10th Cir. 1997) (three-month period, standing alone, is insufficient to establish causation). In this case, Defendant argues that Plaintiff's allegedly protected activity occurred *after* the adverse action. Defendant maintains that the lay off decision was complete on August 11, 1997, when Slowey faxed the seniority list to the Las Cruces store.

In response, Plaintiff asserts that the original list showed that he was the most senior meat cutter, but after he complained about Denney's racial remarks, Plaintiff's seniority date was

recalculated from March 1986 to December 1991, making him a far less senior employee.[2]  (Pl. Ex. 1 ¶¶ 22; 25.)  Plaintiff also submits an affidavit in which Vasquez states that, about two months after Plaintiff was laid off, Vasquez asked Denney for some time off.  (Pl. Ex. 4.)  When Denney replied that he could not give him the time off, Vasquez suggested that he recall Plaintiff back to work.  (*Id.*) Denney replied that he would not recall Plaintiff because Plaintiff has filed an EEOC complaint.  (*Id.*)  This evidence indicates that there was a causal connection between Plaintiff's reports to management of racial slurs and the decisions to lay off Plaintiff and to not recall him.  Viewing the record in the light most favorable to Plaintiff, I find that Plaintiff has established a genuine dispute of material fact as to whether there was a causal connection between his protected activity and the adverse employment actions.  Defendant's Motion for Summary judgment should be denied with respect to this issue.

**C.     Whether Plaintiff is able to establish pretext?**

"If a prima facie case is established, the burden of production shifts, and the defendant must articulate a legitimate, non-discriminatory reason for the adverse action."  *Purrington v. Univ. of Utah*, 996 F.2d 1025, 1033 (10th Cir.1993).  If the employer offers such a reason, the plaintiff may survive summary judgment by showing that there is a genuine dispute of material fact as to whether the proffered reason for the challenged action is pretextual.  *See Richmond v. ONEOK*, 120 F.3d at 208.  A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a

---

[2] Indeed, this reclassification was crucial. As the other five meat cutters were hired between March 1988 and May 1991, Plaintiff went from being the most senior meat cutter to the sixth most senior meat cutter. (Def. Ex. 2, Attach. B.)

14

reasonable fact finder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F. 3d 1319, 1323 (10th Cir.1997) (quotations omitted).

Defendant asserts that the legitimate nondiscriminatory business reason for the lay off and recall decisions was an drastic reduction in sales as a result of market competition. Defendant has met its burden of articulating a legitimate, nondiscriminatory business reason for its decisions. The burden thus shifted to Plaintiff to establish pretext.

In support of his claim of pretext, Plaintiff asserts that Defendant's proffered reason was pretextual because Denney offered hours to Suarez after he was laid off, but did not offer those same hours to Plaintiff. (Pl. Ex. 5 at 43.) Denney testified that he hired two part-time seafood clerks for a brief period after Plaintiff was laid off. (Pl. Ex. 5 at 56-57.) Denny rehired Padilla to work full-time as a seafood clerk on August 9, 1998. (Def. Ex. 4 at 2.) Although Plaintiff had experience in the seafood department, (Pl. Ex. 5 at 60-61), he was not considered for this position. (Def. Ex. 6 at 2.) In September, 1999, Defendant transferred Corky Martinez, a meat cutter in its Alamogordo store to the Las Cruces store. (Pl. 5 at 43; Def. Ex. 9 ¶ 7.) Vasquez stated in his affidavit that Denney refused to recall Plaintiff because Plaintiff filed an EEOC complaint. (Pl. Ex. 4.) This evidence implies that Defendant needed additional help after Plaintiff was laid off and that similarly situated co-workers who did not complain of discrimination were treated differently than Plaintiff. *See McGarry v. Pitkin Co.*, 175 F. 3d at 1202. Issues of material fact remain as to whether Defendant's reason for the adverse employment actions was pretextual. *See Pastran v. K-Mart Corp.* 210 F. 3d at 1206. Plaintiff has presented enough evidence in support his assertion that Defendant's purported reason for the adverse employment actions was pretextual to raise a factual issue. Summary judgment would thus be inappropriate on this ground.

**D.	Whether Plaintiff's Breach of Contract Claim is Supported by the Law and Facts.**

Defendant argues that Plaintiff's claim for breach of employment contract fails because Plaintiff was an at will employee.  This Court applies New Mexico substantive law to this supplemental claim.  *See BankOklahoma Mortgage Corp. v. Capital Title Co.,* 194 F. 3d 1089, 1103 (10th Cir. 1999).  Under New Mexico law, an employer creates an implied contract of employment where its words and actions create a reasonable expectation of termination only for cause.  *See Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P. 2d 776, 779 (1993).  "An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon."  *Id.*, 115 N.M. at 672, 857 P. 2d at 783.  Where a written personnel policy expressly reserves the right to terminate employment without notice for any reason, then that policy does not give rise to an implied employment contract.  *See Garrity v. Overland Sheepskin Co.*, 121 N.M. 710, 714, 917 P. 2d 1382, 1385 (1996).

Defendant asserts that there was no implied employment contract because its Employee Handbook stated that it was "not intended to replace the common law doctrine of employment at will or create a contract of employment, express or implied, as between Smith's and its employees . . ." (Def. Ex. 2, Attach. F at 2.)  Moreover, on June 15, 1990, Plaintiff signed an Acknowledgment that provided that "my employment relationship with Smith's remains terminable at will . . . Smith's may terminate my employment at any time, with or without cause."  (Pl. Ex. 18.)  Defendant has met its initial burden under Rule 56 of showing that Plaintiff was an at will employee and did not have an employment contract under New Mexico law.  *See Garrity v. Overland Sheepskin Co.*, 121 N.M. at

714 , 917 P. 2d at1385. The burden then shifted to Plaintiff to demonstrate a genuine issue for trial on a material matter. *See Celotex v. Catrett*, 477 U.S. at 323.

In response, Plaintiff asserts that management had represented that the employees of Store 483 had all the protections of a union contract, even though they were not covered by a union contract. (Pl. Ex. 3 at 63.) Plaintiff submitted a letter from Defendant to the EEOC stating that Defendant's policy was to follow the union contract and that the union contract required "that employees be laid off in accordance with their established seniority." (Pl. Ex. 15 at 2.) The union contract provided that any seniority employee would not be discharged without just cause. (Pl. Ex. 16 at 2.) An implied employment contract may still arise, in spite of a disclaimer, where the employer's conduct reasonably leads employees to believe that they will not be terminated without just cause and a fair procedure. *See Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575, 893 P. 2d 468, 471 (Ct. App.) *cert. denied* 119 N.M. 389, 890 P. 2d 1321 (1995); *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 6, 791 P.2d 452, 457 (1990). The factors offered by Plaintiff are sufficient to create an issue of material fact as a whether an implied employment contact was created.[3] Summary judgment would therefore be inappropriate on this ground.

Defendant argues that, even if an implied employment contract existed, it had good cause to discharge Plaintiff due to the reduction in force necessitated by economic factors. The facts are disputed as to this issue. Defendant stated in its letter to the EEOC that its policy was to follow the union contract and that the union contract required "that employees be laid off in accordance with

---

[3] Plaintiff also submits an Acknowledgment between Defendant and Denney providing that Denney could be terminated only for cause. (Pl. Ex. 17.) However, the manner in which other employees are treated it not by itself sufficient basis for finding an implied contract. *See Hartbarger*, 115 N.M. at 674, 857 P. 2d at 785.

their established seniority." (Pl. Ex. 15 at 2.) Plaintiff contends that his seniority date was altered after he complained about racist remarks. (Pl. Ex. 1 ¶¶ 22; 25.) Workers were hired and recalled after Plaintiff was laid off. Because material facts remain in dispute as to whether Plaintiff was laid off in accordance with his seniority, summary judgment would be inappropriate. Defendant's Motion for Summary Judgment should be denied with respect to Plaintiff's claim for breach of implied employment contract as contained in Count III of the Complaint.

### E.  Whether Defendant is Entitled to Summary Judgment on Plaintiff's Prima Facie Tort Claim.

Defendant asserts that Plaintiff's claim for prima facie tort is an improper attempt to circumvent the strict legal requirements of established causes of action. New Mexico has joined a few jurisdictions recognizing a cause of action for prima facie tort. *See Schmitz v. Smentowski*, 109 N.M. 386, 394, 785 P. 2d 726, 734 (1990). The elements of this cause of action are: "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; (4) and the absence of sufficient justification for the injurious act." *Lexington Ins. Co. v. Rummel*, 123 N.M. 774, 777, 945 P. 2d 992, 995 (1997). Prima facie tort presumes that defendants underlying conduct is lawful. *See id.* As Plaintiff alleges that Defendant unlawfully discriminated against him, prima facie tort is not applicable. *See Silverman v. Progressive Broad., Inc.*, 125 N.M. 500, 510, 964 P.2d 61, 71 (Ct. App.1998). Moreover, Defendant is correct that prima facie tort should not be utilized to evade the stringent requirements of other established doctrines. *See Padwa v. Hadley*, 127 N.M. 416, 981 P.2d 1234 (Ct. App.) *cert. denied* 127 N.M. 389, 381 P.2d 1207 (1999). Plaintiff should not be permitted to claim prima facie tort as an

alternative to meeting the more stringent requirements of Title VII.  Therefore, Defendant is entitled to judgment as a matter of law on Plaintiff's claim for prima facie tort as contained in Count IV of the Complaint.

**IV.  Conclusion.**

Upon review of the evidence presented on this Motion for Summary Judgment, the Court finds that Plaintiff's a hostile work environment claim should be dismissed for failure to exhaust administrative remedies and that Defendant is entitled to summary judgment with respect to Plaintiff's claim for prima facie tort.  The Court further finds that genuine issues of material fact remain as to Plaintiff's Title VII claims for disparate treatment and constructive discharge based on national origin discrimination, retaliation and breach of implied employment contract.  Therefore, Defendant's Motion for Summary Judgment (Doc. 27), filed May 3, 2000, shall be **GRANTED IN PART AND DENIED IN PART**.

**AN ORDER CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**